# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 14-781V
(Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
RICHARD J. MICHEL,                *        Filed: November 28, 2016
                                  *
             Petitioner,           *
     v.                            *
                                  *        Vaccine Act; Attorney's Fees
                                  *        & Costs; Reasonable Basis
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                  *
             Respondent.          *
                                  *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Ravinder Singh Bhalla*, Florio Perrucci Steinhardt and Fader, LLC, Rochelle Park, NJ, for Petitioner.

*Sarah Duncan*, U.S. Dep't of Justice, Washington, D.C. for Respondent.

## DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On August 27, 2014, Richard Michel filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] The Petition alleged that the influenza ("flu") vaccine that he received on or about September 27, 2011, caused him to develop Guillain-Barré syndrome ("GBS"). *See* Pet. at 1 (ECF No. 1). The parties filed expert reports in this case, but earlier this year Petitioner opted to request dismissal of his claim, and I granted that request by decision dated March 29, 2016 (ECF No. 32).

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Petitioner now requests a final fees and costs award in the total amount of $62,943.89[3]. *See* Motion for Attorney's Fees and Costs, dated September 29, 2016 (ECF No. 35), and Brief in Support, dated September 29, 2016 (ECF No. 36) ("Fees App."). Petitioner also filed a reply brief itemizing additional costs associated with Drs. Kinsbourne and Morgan, amounting to $11,700. *See* Reply to Respondent's Response to Petitioner's Motion for Attorney's Fees, dated November 7, 2016 (ECF No. 38) ("Reply"). Respondent does not assert that the case lacked reasonable basis despite its dismissal, but questions whether the total sum requested is itself reasonable. *See* Response to Motion for Attorney's Fees, dated October 26, 2016 (ECF No. 37) ("Response"). Based upon my review of the record and materials filed in support of the fees application, I hereby grant in part Petitioner's motion, awarding $46,720.39 in fees and costs.

## Procedural History

As noted above, this action was initiated in August 2014. However, the first attorney who represented Mr. Michel, Mr. Steven Srenaski, began work on the matter nine months before, in November 2013. *See* Fees App. Exhibit ("Ex.") 2 at 1-8. Mr. Srenaski was the sole attorney who performed tasks for Petitioner's claim until the date of filing, billing approximately 58 hours to the case. *Id.* at 1-8. He worked on the matter for a bit longer before being replaced by another attorney at the same firm, Mr. Ravinder Bhalla, and Petitioner formally requested to have Mr. Bhalla replace Mr. Srenaski by motion dated December 9, 2014 (ECF No. 10), which I thereafter granted.

After a statement of completion was filed in this matter in December 2014, Respondent submitted her Rule 4(c) Report on January 16, 2015 (ECF No. 11). In it, Respondent observed that although Mr. Michel received the flu vaccine in late September 2011, the medical records revealed he had experienced no symptoms prior to February 2012 – nearly five months later. Rule 4(c) Report at 2. This, Respondent maintained, was too long for a causation/flu-GBS claim. *Id.* at 4. Respondent otherwise noted that Petitioner had not offered any expert support for his claim, and that a viral infection that Petitioner experienced prior to his officially-recorded symptoms was a more likely cause for his GBS. *Id.*

Petitioner thereafter undertook efforts to obtain expert support for his claim, filing a report from Dr. Marcel Kinsbourne on June 1, 2015 (ECF No. 15)("Kinsbourne Report"). Dr. Kinsbourne stated that, assuming onset of Mr. Michel's symptoms began as the records indicated (in February 2012), he could not offer an opinion that Petitioner's GBS was vaccine-related, since the time interval from vaccination to onset of symptoms was too long to be medically acceptable. Kinsbourne Report at 5-6. However, Petitioner had also asserted, in an affidavit filed in support of his Petition, that he first experienced symptoms within one to two weeks of the vaccination, and

---

[3] Petitioner's Fees App. contained contradictory amounts to be paid. The brief in support of the motion stated that the total amount owed to Petitioner was $56,020.07, however the itemized invoice contained as an exhibit with the Fee App. listed the total due as $62,943.89. To resolve this, my clerk called Petitioner's counsel to verify the proper total, which is $62,943.89. *See* Informal Communication, filed on November 18, 2016.

this fact pattern would support the diagnosis of chronic inflammatory demyelinating polyneuropathy ("CIDP") – a demyelinating illness similar to GBS but with a stop-start nature and longer course. *Id.* at 6. The medical records, however, contained no such alternative diagnosis, and Dr. Kinsbourne admitted that if his alternative causation explanation were accepted, the GBS diagnosis reflected in the contemporaneous medical records "would have to be discarded." *Id.*

I held a status conference with the parties in this matter on June 9, 2015, at which time the GBS vs. CIDP diagnoses, and support (or lack thereof) for them in the record, were discussed. Respondent indicated that she would file a responsive expert report on the matter, while Petitioner stated he would locate record support for the alternative CIDP diagnosis. Order, dated June 9, 2015 (ECF No. 16). Respondent subsequently filed that expert report from Dr. Arnold Levinson on August 31, 2015 (ECF No. 21-1), in which Dr. Levinson strongly disputed Dr. Kinsbourne's proposal that CIDP was the correct diagnosis.

Based upon Respondent's expert, I informed Petitioner that I would allow him the opportunity to supplement Dr. Kinsbourne's earlier opinion. Order, dated September 9, 2015. Petitioner was to do so on or before October 16, 2015, but thereafter requested two extensions of time to act. I held another status conference with the parties in December 2015, at which time Respondent expressed the intent to seek the case's dismissal. I set February 12, 2016 as the deadline to do so (Order, dated December 21, 2015), but after Respondent filed her motion (ECF No. 27), Petitioner filed a concurrent dismissal request on March 23, 2016 (ECF No. 30), which as noted above I subsequently granted.

**Fees Request**

Mr. Michel filed the present fees petition in September, seeking in total $62,943.89 in fees and costs. *See generally* Fees App. His total requested award includes $49,767.50 in attorney's fees, incurred by Messrs. Bhalla and Srenaski (billing at $350 per hour and $275 per hour, respectively), plus two associates both billing their time at $225 per hour. Fees App. Ex. 2 at 15. Paralegal time in the total sum of $5,871.00 is also requested for the two paralegals who performed wok on the matter, both of whom were billed at $95.00 per hour. *Id.* In addition, Petitioner asks for $7,305.39 in litigation-related costs.

With respect to experts, Petitioner asks for $9,700.00 for Dr. Kinsbourne's time (with $1,000.00 of that sum payable as a litigation cost to reflect an initial retainer paid by Petitioner's counsel). Fees App. at 16; *see generally* Reply. Petitioner also retained an additional undisclosed expert, Dr. Thomas Morgan, to review medical records in the matter and possibly offer an opinion in the matter. He ultimately did not do so, but the attorney's invoices offered in support of the fees request indicate that he was consulted prior to the claim's filing. Ex. 2 to Fees App. at 4-7. Petitioner asks for reimbursement of the $2,000.00 retainer paid to him for these services.

On October 26, 2016, Respondent filed a document reacting to Petitioner's Motion. *See* Response. Respondent asserts that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for Respondent in the resolution of a request by a Petitioner for an award of attorney's fees and costs." *Id*. at 1. Respondent added that she "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id*. at 2. However, she maintained that a reasonable amount for fees and costs in the present case would fall between $22,000.00 and $38,000.00. *Id*. at 3. In support of the range, Respondent cites two other cases in which fees and costs were awarded after the case was dismissed, and where expert reports were filed. *See, e.g., Pokorny v. Sec'y of Health & Human Servs.,* No. 12-556V, 2014 WL 4216016, at *1 (Fed. Cl. Spec. Mstr. July 28, 2014) (fees stipulated to after case lasted for two years).

Petitioner filed a reply on November 7, 2016. ECF No. 38. In it, he reiterated his prior arguments, noting that Respondent had not globally objected to the propriety of an award, nor had offered any specific line-item objections. Reply at 1. He also observed that the two cases cited in support of Respondent's proposed fees range had been the result of stipulations, limiting their applicability to these circumstances. *Id*. at 2. And he attached the invoices for Drs. Kinsbourne and Morgan that were not filed with the original fees request. The matter is now ripe for resolution.

**ANALYSIS**

**I.   Attorney's Fees Award**

I have in other decisions addressed at length the legal standards applicable to evaluating the propriety of a fees request in an unsuccessful case. *See generally Lemaire v. Sec'y of Health & Human Servs.,* No. 13-681V, 2016 WL 5224400, at *3-4 (Fed. Cl. Spec. Mstr. Aug. 12, 2016). At bottom, even in cases that are dismissed, attorneys representing Vaccine Program claimants may still receive a fees and costs award, assuming the matter had reasonable basis during its life. Here, Respondent does not assert that the matter lacked reasonable basis prior to Petitioner's decision to seek dismissal, and I do not independently find otherwise.

This leaves determining the sum to be paid to Mr. Michel's counsel, and calculating it raises another legal topic repeatedly examined in the decisions of this Court. *See, e.g., Hudson v. Sec'y of Health & Human Servs.,* No. 15-114V, 2016 WL 3571709, at *2-5 (Fed. Cl. Spec. Mstr. June 3, 2016). In effect, counsel is entitled to a reasonable hourly rate (a determination depending in part on where counsel practices), and that sum is multiplied by reasonable hours spent on the matter. Special masters have discretion to determine whether the work performed on the matter was reasonable, and need not conduct a line-by-line analysis of the submitted invoices. *Saxton v. Health & Human Servs.*, 3 F.3d 1517 at 1521-22 (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Health & Human Servs.,* 102 Fed. Cl. 719 at 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy*

4

*v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

First, I find that the hourly rates requested herein are reasonable. Mr. Bhalla and the other attorneys who worked on this matter practice in the greater New York metropolitan region, and similarly-situated attorneys representing Vaccine Program litigants have been found entitled to forum rates. *See, e.g., Paterek v. Sec'y of Health & Human Servs.,* No. 02-411V, 2014 WL 3339503, at *3 (Fed. Cl. Spec. Mstr. June 12, 2014); *Dimatteo v. Sec'y of Health & Human Servs.,* No. 10-566V, 2014 WL 1509320, at *5-6 (Fed. Cl. Spec. Mstr. Mar. 27, 2014). The rates requested, moreover, are consistent with the ranges paid to forum counsel of similar experience, as set forth in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *18-21 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[4] Mr. Bhalla has practiced law since 1999, and is currently a Partner at Florio Perrucci Steinhardt and Fader, LLC, and thus has approximately 17 years of experience. Fees App at 2. Accordingly, I will compensate Mr. Bhalla at the hourly rate of $350 per hour; Mr. Srenaski at the rate of $275 per hour; and the two associates who assisted on the matter at the rate of $225 per hour.

Second is the matter of the reasonableness of the time devoted to Mr. Michel's claim. I find a reduction in the fees request, based on the total hours billed to the matter, is appropriate. Attorneys began working on this matter in November 2013, approximately nine months before it was filed. Thus were under no immediate time pressure to file the claim, assuming an onset of symptoms as early as September 2011 (meaning that, under the Act's three-year limitations period, the claim would have been timely if filed before September 2014). Section 16(a)(2). A substantial amount of time (by my review, approximately 20.6 hours) was devoted to drafting what ended up being a four and one-half page petition, alleging a claim very common to the Vaccine Program rather than a complicated or opaque fact pattern requiring significant attorney input. Moreover, even assuming some front-end work was required in preparing the matter for filing, Mr. Bhalla alone, after appearing for Mr. Srenaski (who had already devoted 60 hours to the matter), billed more than 75 additional hours to the case – in service of the preparation of an unpersuasive expert report that was never supplemented. And there are also instances in the invoice which it appears counsel were attempting to get "up to speed" to Vaccine Program practice generally – the kind of task that is not compensated. *See, e.g.,* Fees App. Ex. 2 at 1 (billing 1.9 hours for reviewing case

---

[4] *McCulloch's* formulation has recently been converted to a matrix that is now published as a downloadable pdf file on the Court of Federal Claims' website, as guidance to counsel requesting fees awards. *See* http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters (last visited November 7, 2016).

law); *see also Estate of Oswalt v. Sec'y of Health & Human Servs.,* No. 03–2153, 2011 WL 2149932 (Fed. Cl. Spec. Mstr. May 2, 2011).

All in all, this is an excessive amount to bill to a flu-GBS case. Some initial research by counsel would have revealed that the claim would be difficult to prevail upon, given the lengthy five-month timeframe from vaccine to onset. *Woodring v. Sec'y of Health & Human Servs.,* No.14-896V, 2015 WL 9701094 at *8 (Fed. Cl. Spec. Mstr. Nov. 9, 2015)("the Secretary's proposal to add [to the Vaccine Table] the injury of GBS after receiving the influenza vaccine includes a timeframe for onset between 3 and 42 days"). I also take into account the fact that the matter was not successfully prosecuted. I have cut back fees awarded to attorneys even where they prevailed, when it was evident that more work was devoted to the matter than necessary. *See, e.g., Hudson,* 2016 WL 3571709, at *4-5 (reducing sum awarded to attorneys who over-prepared in litigating flu-GBS claim; case was successfully resolved in claimant's favor, but attorneys spent inordinate time preparing for case's filing despite non-complex nature of issues presented). The case for doing so here is even stronger.

I also give some credence to Respondent's proposed ranges. Petitioner correctly notes that the two cases Respondent cites involved stipulated fees awards, reducing their probative value somewhat. But they nevertheless stand as representative examples of what might be reasonable to bill in similar cases that are unsuccessful, and which involved experts but did not go to trial. Thus, although I do not accept the ranges as a yardstick for evaluating the proper magnitude of the award, they do support the decision to greatly reduce what counsel will receive, given my sense that more work was devoted to this matter than necessary.

For the reasons stated above, I will reduce the time billed to this matter as follows:

(a) Mr. Srenaski's time will be reduced by 30 percent (.3 x 59.7 hours = 17.91), or to 41.8 hours, for an award for his services of $11,495.00 in total (41.8 hours x $275);

(b) Mr. Bhalla's time will be reduced by 50 percent (.5 x 76.9 hours = 38.45), for a total award of $13,457.50 for his time (38.45 hours x $350); and

(c) Associate time will be reduced by ten percent (.1 x 28.6 hours = 2.86), or to 25.74 hours, for a total award of $5,791.50 (25.74 hours x $225).

Thus, the total fees awarded to Petitioner are $30,744.00.

The above calculations are designed to achieve the "rough justice" of balancing the need to compensate counsel for taking on Vaccine Act cases, against my own determination, based on

my experience and review of comparable cases, of what is just to award counsel who are unsuccessful and who also appear to have allowed costs to grow a bit more than necessary. I reduce Mr. Srenaski's time less than Mr. Bhalla's, to reflect that some initial work might have been needed to get the case ready to be filed.

## III. Costs

There are three categories of costs requested herein: paralegal costs, litigation-related costs, and expert costs.

First, Petitioner asks for an award of $5,871.00 in paralegal costs incurred by two paralegals who performed 61.8 hours of work on the case between 2014 and the matter's dismissal, based on the rate of $95.00 per hour. *See* Fees App. Ex. 2 at 14. Respondent makes no objection to the proposed paralegal rates, and I find them to be reasonable. I will therefore award the requested paralegal costs of $5,871 in full.

Second, Mr. Michel's counsel incurred $4,305.39 in litigation costs for copying, the filing fee, and related items. *Id.* at 14-15. These costs as well are not opposed by Respondent, and I discern no independent reason not to award them in full.

Third are Dr. Kinsbourne's costs. Petitioner requests $9,700.00, inclusive of his retainer and work performed, for 19.4 hours of work billed at the rate of $500 per hour. Both figures, however, are objectionable. Although Dr. Kinsbourne has received the sum of $500 per hour in some instances, special masters have also noted in other cases that it would be appropriate to award him a lesser sum depending on the circumstances. *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *7-9 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) (awarding $400 per hour).

In addition, and with *Dingle* in mind, in this case I do not find that the complexity of issues presented by Petitioner's claim warranted nearly 20 hours of Dr. Kinsbourne's time. In effect, the opinion he offered attempted to dispute the findings of the medical records as to the proper diagnosis for Mr. Michel, without any showing as to *why*. And the invoices submitted in support of this expense show that Dr. Kinsbourne did less work on the matter after the deficiencies in his opinion (problems the opinion itself admitted) were revealed – precisely when additional work might have been warranted, in order to meet Respondent's objections. Here, Dr. Kinsbourne's report did more to suggest that the claim lacked viability than the opposite.

Accordingly, I will compensate Dr. Kinsbourne at the rate of $400 per hour, for 12, rather than nearly 20, hours of work, for a total sum of $4,800.00, with $1,000.00 of that sum being paid to counsel as reimbursement for the retainer cost.

7

Finally, Petitioner asks for $2,000.00 as reimbursement for a retainer paid to Dr. Morgan. Petitioners have in the past been awarded costs associated with retaining an expert solely for the purpose of reviewing medical records. *See, e.g., Yang v. Sec'y of Health & Human Servs.,* No. 10-33V, 2013 WL 4875120, at *10 (Fed. Cl. Spec. Mstr. Aug. 22, 2013) (review expert received $2,550.00); *Estate of Oswalt v. Sec'y of Dep't of Health & Human Servs.*, No. 03-2153V, 2011 WL 2149932, at *14 (Fed. Cl. Spec. Mstr. May 2, 2011) (review expert received $1,250.00).

Based on the above, the total sum requested is not facially unreasonable. However, Petitioner has not offered an actual invoice from Dr. Morgan, filing instead a fee schedule, and it is therefore impossible to tell how much work he actually performed, nor has Petitioner made a case for why his services were necessary. The need to retain a reviewing expert seems even less compelling here, when the sole expert to offer a written opinion billed nearly $10,000, only to opine that he could <u>not</u> offer an opinion unless the facts were other than what the records indicated. I will thus reimburse counsel only half of this expert expense, or $1,000.00.

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioner's interim fees award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
| --- | --- | --- | --- |
| Mr. Bhalla's Fees | $26,915.00 | $13,457.50 | $13,457.50 |
| Mr. Srenaski's Fees | $16,417.50 | $4,922.50 | $11,495.00 |
| Associate Fees | $6,435.00 | $643.50 | $5,791.50 |
| Dr. Kinsbourne's Fees[5] | $8,700.00 | $4,900.00 | $3,800.00 |
| Expert retainers | $3,000.00 | $1,000.00 | $2,000.00 |
| Paralegal Costs | $5,871.00 | None | $5,871.00 |
| Litigation Costs | $4,305.39 | None | $4,305.39 |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I GRANT IN PART Petitioner's Motion for Attorney's Fees and Costs, awarding $46,720.39 in fees and costs. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this decision.[6]

---

[5] Dr. Kinsbourne's bill reflects that he charged a total of $9,700, however $1,000 of that total is the retainer, which is reflected in the chart as "expert retainers" along with Dr. Morgan's $2,000 retainer.

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master